THE FIDELITY AND CASUALTY INSURANCE COMPANY ET AL. *v.* SEARS, ROEBUCK AND COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 1st—decided April 8th, 1938.

*Michael V. Blansfield* and *Harry M. Albert,* for the appellants (plaintiffs).

*William W. Gager,* with whom was *Henry C. Campbell,* for the appellee (defendant).

BROWN, J. The complaint demurred to is composed of three counts, containing identical allegations of fact except that the second count also states a demand made of the defendant and its failure to pay. The second count further alleges as a legal conclusion the defendant's implied agreement to indemnify the plaintiffs, and the third in like manner one to contribute. The plaintiffs' brief describes the first count as alleging a cause of action in tort, the second for reimbursement or indemnity, and the third for contribution. The facts alleged are in substance these: The plaintiff Insurance Company, duly authorized, insured the plaintiff Hathaway, doing business as Hathaway's Express, for compensation to his employees injured in the course of their employment by him. On June 6th, 1935, the plaintiff Hathaway was employed by the defendant to carry freight and merchandise for it and to remove rubbish accumulated in its business, and used his trucks and employees for this pur-

pose. Hathaway and the defendant, each regularly employing more than five employees, were subject to Part B, Chapter 280 of the General Statutes as amended. The defendant was a self-insurer of its liability. In doing the work for the defendant on June 6th, the plaintiff's agent Hoard was injured through the negligence or the wilful or wanton act of the agents of the defendant. Pursuant to Hoard's claim duly made for compensation to which he was entitled under the law, an award including an allowance for hospital and surgical expense, and for permanent partial loss of function of his right arm was made by the commissioner against Hathaway, and paid by the plaintiff company as insurer in the amount of $1167.75. The payment of this sum which the plaintiff company was required to make for Hoard's injury, was not caused through any fault of the plaintiff Hathaway or his employees, or by any act of Hoard, but solely through the defendant's acts by his agents in the course of their employment. Hoard brought suit against the defendant under § 5231 of the Workmen's Compensation Act, permitting a tort action against a third party where the injury occurs under circumstances creating a liability against it. In this action judgment was rendered for the defendant upon its special defense that under § 5230 it was an employer of Hoard and should not be made to respond in damages for the injury received, and that his only remedy was under the Compensation Act. On appeal the Supreme Court of Errors held, as reported in *Hoard v. Sears, Roebuck & Co., Inc.*, 122 Conn. 185, 188 Atl. 269, that as to the employee Hoard the defendant was a principal employer liable to pay workmen's compensation only, and was not liable to an action at common law.

To each count of the complaint in so far as it pur-

ported to set forth a cause of action in behalf of the plaintiff Hathaway, the defendant demurred upon the ground, among others, that the facts stated did not constitute a cause of action, there being no adjudication of liability against the defendant in the compensation court, and the injury, if any, to the contract relations of the plaintiff not constituting a legal injury to the plaintiff. To each count of the complaint in so far as it purported to set forth a cause of action in behalf of the plaintiff company it demurred upon the same grounds, and, further, because the plaintiff company being an insurer only of the plaintiff Hathaway, had no cause of action upon the facts against the defendant. The court sustained the demurrers to all three counts upon all the grounds stated. Whether the court erred in this ruling is the principal question upon this appeal. The record and argument of counsel suggest but three possible grounds of recovery by the plaintiffs under their complaint: subrogation; exoneration, indemnity or contribution; and a tort action in the nature of an action on the case. Since the plaintiffs by their brief expressly disclaim the first of these as a basis of liability, the other two only require consideration.

Contribution is "a payment made by each, or by any, of several having a common interest or liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others. Exoneration, or indemnity as it is frequently called, is the right which a person has who has been compelled to pay what another should be forced to pay in full. In the main the principles governing the two rights are similar. . . ." 6 R. C. L. p. 1035, § 1. This doctrine affording reimbursement is based not on contract but upon the equitable principle that those voluntarily assuming a common burden should bear it

equally. "But it is essential to the application of the principle that the party claiming contribution be *in aequali jure;* if his obligation is primary and that of the defendant secondary only, he cannot have contribution. Op. Cit., p. 1036, § 2; *Bulkeley* v. *House,* 62 Conn. 459, 467, 26 Atl. 352; *Waters* v. *Waters,* 110 Conn. 342, 345, 148 Atl. 326; *Azzolina* v. *Sons of Italy,* 119 Conn. 681, 692, 179 Atl. 201. See also *Johnson* v. *Mortenson,* 110 Conn. 221, 229, 147 Atl. 705; 2 Pomeroy's Equitable Remedies (Ed. 1905), p. 1480, § 915; 2 Lawrence, Equity Jurisprudence, p. 828, § 742; Restatement, Restitution, p. 360, § 81. Testing the facts of the case before us by this principle, it becomes clear that the plaintiffs' cause of action cannot be sustained thereunder, for the plaintiffs and the defendant are not in aequali jure. This is by reason of the nature, as between them, of the burden of the liability to pay compensation under the law. While it is true that no distinction can be recognized in liability to the employee Hoard, as between Hathaway his immediate employer and the defendant as principal employer under § 5230, both being directly liable to him, the fact that the defendant "for the limited purpose of the attainment of the object of that section, . . . is made subject to a like liability as the actual employer of the injured workman, does not alter their status and relations, or abolish the logical distinctions between them, when the object of the statute has been served and rights are to be determined which the statute does not create or affect." *Johnson* v. *Mortenson,* supra, 227. Accordingly, as we held in that case at page 228, as between them, the liability of the immediate employer is primary and that of the principal employer secondary only. Therefore neither Hathaway, nor the plaintiff insurance company as the real party in interest, whose rights can only be worked

out through him, is entitled to relief under their complaint on the ground of exoneration, indemnity, or contribution.

The relation between Hathaway and Hoard was contractual, and the Compensation Act was a part of the contract between them. *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 371, 94 Atl. 372. The plaintiffs are seeking to recover of the defendant as damages the cost of discharging Hathaway's obligation under this contract to pay the compensation awarded to Hoard by reason of the injury caused to him by the defendant's employee. The question as to whether the plaintiffs' complaint sets forth a valid cause of action in tort against the defendant is therefore reduced to this: does the wrongful act of the defendant interfering to Hathaway's damage with his contract relations with Hoard, constitute an actionable legal injury? In the case of *Connecticut Mutual Life Ins. Co.* v. *New York & N. H. R. Co.*, 25 Conn. 265, where the plaintiff sought to recover the amount it had been compelled to pay under a policy of life insurance for the death of its insured caused by the defendant's negligence, this court held that the wrong complained of was not the subject of a suit at law, and that there could be no recovery. In its opinion the court says: "The single question is, whether a plaintiff can successfully claim a legal injury to himself from another, because the latter has injured a third person in such a manner that the plaintiffs' contract liabilities are thereby affected" (p. 274). "We decide, that in the absence of any privity of contract between the plaintiffs and defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad company, being brought

home to the insurers only through their artificial relation of contractors with the party who was the immediate subject of the wrong done by the railroad company, was a remote and indirect consequence of the misconduct of the defendants, and not actionable" (p. 276). This decision established the law of this State upon this point and has been followed in many other jurisdictions. The rule therein laid down was adopted with approval in the following cases, among others: *Byrd* v. *English,* 117 Ga. 191, 43 S. E. 419, 421; *Central Georgia Power Co.* v. *Pope,* 141 Ga. 186, 80 S. E. 642, 643; *Brink* v. *Wabash R. Co.,* 160 Mo. 87, 60 S. W. 1058, 1060; *Thompson* v. *Seaboard Air Line Ry. Co.,* 165 N. C. 377, 380, 81 S. E. 315, 316; *Mobile Life Ins. Co.* v. *Brame,* 95 U. S. 754, 758. It is cited with approval in *Nieberg* v. *Cohen,* 88 Vt. 281, 92 Atl. 214, 217. See also 1 Sutherland, Damages (4th Ed.) § 33; 8 Couch on Insurance, p. 6663, § 2024.

The same principle had been applied in the earlier case of *Anthony* v. *Slaid,* 52 Mass. 290, where defendant's wrongful act was not negligent but intentional. It did not appear in that case, however, that the defendant had knowledge of the plaintiff's contract right or intended to injure him. The rule as laid down in the *Connecticut Mutual* case is not applicable where an intent to injure through the contract liability is involved in the wrongful act, the court saying at page 276: "Had the life of Dr. Beach [the insured] been taken with intent to injure the plaintiffs through their contract liability, a different question would arise, inasmuch as every man owes a duty to every other [man] not intentionally to injure him." A later decision of this court which expressly approved the principle laid down in the *Connecticut Mutual* case that a privity must exist between the act of a wrongdoer and the injury complained of in order to lay the foun-

dation for a recovery, held that such privity was shown by the defendant's actual intent to injure the plaintiff in his contractual relation by the wrongful act committed. *McNary* v. *Chamberlain,* 34 Conn. 384, 388, 389. The principle of the *Connecticut Mutual* case was also approved in *Gregory* v. *Brooks,* 35 Conn. 437, 449, where it was held that a wrongful act to a third party sustaining a business relation to the plaintiff done by the defendant with a fraudulent and malicious design to injure the plaintiff, was actionable as not within the rule.

It remains to determine whether the complaint is sufficient to allege a good cause of action in tort within the principles of the three above cases which declare the law of Connecticut upon this question. The allegation that the defendant "employed" Hathaway to carry its freight and remove its rubbish, sufficiently states a contract for the doing of these things. It does not, however, reveal a "privity of contract" within the meaning of that expression as used in that part of the *Connecticut Mutual* case opinion quoted in the second above paragraph. The only contract stated is for the doing of the two things specified. It contains no express reference to the payment of workmen's compensation, and no warrant appears for construing it to include or involve any implied provision for the payment of it to Hoard as an employee of Hathaway, himself an independent contractor. Privity of contract relating to compensation, as well as any "direct obligation". therefor from the defendant to Hathaway "growing out of the contract or relation between" Hoard and the defendant, are entirely lacking. Neither an act by the defendant with a fraudulent and malicious design to injure the plaintiff within the principle of the *Gregory* case, nor one with actual intent to injure the plaintiff in his contractual relation

within that of the *McNary* case, is alleged to take the case out of the general rule of no liability as laid down in the *Connecticut Mutual* case. The complaint is silent as to the existence of knowledge even upon the defendant's part of any contract between Hathaway and Hoard, and the allegation that the latter was injured by "the negligence or the wilful or wanton act" of the defendant's employees, falls far short of stating an actionable wrong under either the *Gregory* or the *McNary* case. The complaint does not allege a valid cause of action against the defendant, and the court properly sustained its demurrers thereto.

This result, denying a recovery against the defendant for damage flowing from the wrongful act of its agent, is not so harsh as may at first appear. It is to be remembered that Hathaway was not a servant of the defendant, but an independent contractor. It is reasonable to assume, therefore, that in so far as the plaintiff Hathaway is concerned, the amount the defendant was bound by contract to pay him for the work done, included a sum to cover the cost of compensation insurance protecting Hoard and other employees engaged thereon. In so far as the plaintiff company is concerned it had presumably been fully compensated in the way of premiums received for carrying the risk which eventuated in the payment of this award.

The remaining question under the plaintiffs' assignment of errors, is whether the court erred in denying their motion for leave to file an amended complaint after it had sustained the demurrers which we have discussed. This amended complaint was in four counts. The plaintiffs describe the first as presenting their cause of action for tort, the second for equitable reimbursement, the third for legal indemnity, and the fourth for contribution in equity. The only mate-

rial new allegation of fact was a paragraph to the effect that the compensation commissioner's previous awards in favor of Hoard against the plaintiffs only, were supplemented by a further award of November 16th, 1937, decreeing that the plaintiffs and the defendant were obligated for compensation but "as no compensation is now due the claimant, no monetary payments are now ordered." From what we have already stated, it is apparent that this amended complaint was demurrable for the same reasons as was the complaint to which the demurrers were sustained. Since if allowed, it would not have materially changed the issues, the court did not err in denying the motion to amend. *Perdue* v. *Zoning Board of Appeals*, 118 Conn. 174, 180, 171 Atl. 26.

There is no error.

In this opinion the other judges concurred.